UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DEBORAH GAIL DANDREO, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )   Civil No. 09-347-P-H |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she is disabled by cervical and lumbar degenerative disc disease and carpal tunnel syndrome, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine and carpal tunnel syndrome, Finding 2, Record at 9; that she had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that she could lift 10 pounds maximum and five pounds frequently, could stand or walk six hours out of an eight-hour day, could sit for six hours out of an eight-hour day, could never climb ladders, ropes, or scaffolds, could frequently climb ramps or stairs, could occasionally stoop, kneel, crouch, or

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has

crawl, was unable to work on sloped, uneven, or irregular terrain, could occasionally use her left non-dominant upper extremity above the shoulder, and could not engage in repetitive use of the hands or fingers for fine manipulation, Finding 4, *id*. at 12; that, considering her age (34 years old, defined as a younger individual, on the date her application was filed), education (limited), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 16; and that she, therefore, had not been under a disability since November 27, 2007, the date her application was filed, Finding 10, *id*. at 17.  The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual

work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks reversal and remand on either of two bases: that the administrative law judge erred in (i) finding her capable of performing jobs seemingly precluded by a limitation against repetitive use of her hands or fingers for fine manipulation, and (ii) arriving at an RFC determination unsupported by substantial evidence. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 6) at 2-4. I conclude, and recommend that the court find, that reversal and remand are warranted on the basis of the first point of error.

### A. Jobs Precluded by Limitation on Fine Manipulation

Social Security Ruling 00-4p ("SSR 00-4p") directs that "[o]ccupational evidence provided by a VE [vocational expert] or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT [Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991)]." SSR 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009), at 244. "When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." *Id.*

In this case, the administrative law judge relied at Step 5 on the testimony of a vocational expert that a person with the posited RFC could perform the representative occupations of document preparer, DOT § 249.587-018, copy examiner, DOT § 979.687-026, and order clerk, DOT § 209.567-014. *See* Record at 16, 50-51. When questioned by the administrative law

judge as to whether his testimony regarding those three occupations was consistent with the DOT, the vocational expert indicated that it was. *See id*. at 51.

Nonetheless, the plaintiff argues, there is an apparent conflict between the DOT's description of all three jobs as requiring frequent fingering, *see* DOT §§ 209.567-014, 249.587-018, 979.687-026, and the administrative law judge's finding that the plaintiff could not engage in repetitive use of the hands or fingers for fine manipulation, *see* Finding 4, Record at 12.[2]

As this court previously has noted, the DOT does not speak in terms of "repetitive" use of the upper extremities; instead, it addresses whether the need to reach, handle, or finger is "not present," "occasionally" present (that is, occurring up to one-third of the time), "frequently" present (that is, occurring from one-third to two-thirds of the time), or "constantly" present (that is, occurring two-thirds or more of the time). *Perham v. Barnhart*, No. 03-240-P-S, 2004 WL 1529287, at *2 (D. Me. June 24, 2004) (rec. dec., *aff'd* July 13, 2004). The word "repetitive," in the context of upper-extremity use, has no universally acknowledged and understood analogue in the vocabulary of the DOT. *See id*. at *3.

At oral argument, counsel for the commissioner contended that:

1.      *Perham* is distinguishable. In that case, the administrative law judge clarified to the vocational expert that there was a restriction not only against repetitive use of the hands and arms but also against more than occasional gross and fine manipulation. *See Perham*, 2004 WL 1529287, at *2. Here, there was no such clarification. The plaintiff's counsel had an opportunity, of which he did not avail himself, to question the vocational expert at hearing as to whether a restriction against frequent manipulation would eliminate the jobs in issue.

2.      Several courts have held or observed, correctly in the commissioner's view, that

---

[2] The parties do not disagree that "fine manipulation" equates with "fingering."

there is no conflict for purposes of SSR 00-4p between a restriction against "repetitive" hand or arm movements and a job entailing "frequent" such movements because the word "repetitive" speaks to the manner, rather than the timing, of a movement. *See Gardner v. Astrue*, 257 Fed. Appx. 28, 30 n.5 (9th Cir. 2007) ("Although we do not base our holding on this point, we note that 'repetitively' in this context appears to refer to a qualitative characteristic – i.e., *how* one uses his hands, or *what type* of motion is required – whereas 'constantly' and 'frequently' seem to describe a *quantitative* characteristic – i.e., *how often* one uses his hands in a certain manner. Under this reading, a job might require that an employee use his hands in a repetitive manner *frequently*, or it might require him to use his hands in a repetitive manner *constantly*."); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) ("[F]requent reaching and handling requirements are not equivalent to repetitive use of the right hand."); *Harrington v. Astrue*, Civil Action No. 1:06CV936, 2008 WL 819035, at *5 (M.D.N.C. Mar. 21, 2008) (rec. dec., *aff'd* May 14, 2009) ("Although it does not define the term 'repetitive,' it is clear that the DOT does not use this term to describe 'physical demand' as it does the terms occasionally, frequently, and constantly. The DOT uses the term 'repetitive' when describing the 'temperament' of a job. The *Oxford English Dictionary* defines 'repetition' as 'the action or fact of doing something again; renewal or recurrence of an action or event; repeated use, application, or appearance.' Clearly, it is possible to do something repeatedly without doing it a set fraction of the time.") (citation and footnote omitted).

    3.    The vocational expert seemed to appreciate the distinction between "repetitive" and "frequent." In responding to an initial hypothetical question that did not include the restriction against repetitive use of the hands or fingers for fine manipulation, he supplied three jobs that are listed as entailing "[p]erforming REPETITIVE or short-cycle work": mail handler,

DOT § 209.687-014, order caller, *id*. § 209.667-014, and marker, *id*. § 209.587-034.  When the administrative law judge altered the hypothetical question to, among other things, add the fine-manipulation restriction, the vocational expert cited the jobs now in question, none of which is described as entailing the performance of repetitive or short-cycle work.  *See id*. §§ 979.687-026, 249.587-018, 209.567-014.

This third point may be quickly dispatched.  As the plaintiff's counsel rejoined at oral argument, the DOT's reference to repetitive or short-cycle work addresses mental, rather than physical, functioning.  Specifically, it is one of 11 enumerated "temperaments," or "worker trait characteristics."  *See Gaspard v. Social Sec. Admin. Comm'r*, 690 F. Supp.2d 607, 614-15 & n.18 (E.D. Tex. 2009).  The presence or absence of that "temperament" cannot fairly be correlated to the presence or absence of a restriction against repetitive fine manipulation.

Turning to the first and second points, counsel for the commissioner is correct that, in *Perham*, this court did not confront the question of whether a restriction against repetitive fine manipulation, on its face, presents an apparent unresolved conflict with a DOT description of a job as requiring frequent fingering.  *Perham* therefore is not controlling.  Yet, my research indicates that courts addressing that precise question have reached divergent conclusions.  While some, such as the courts in *Gardner*, *Renfrew*, and *Harrington*, have found the terms "repetitive" and "frequent" facially distinguishable, others have detected an apparent, unresolved conflict for purposes of SSR 00-4p.  *See, e.g., Boone v. Barnhart*, 353 F.3d 203, 207 (3d Cir. 2003) (noting that, according to DOT, job of sales attendant "involves frequent reaching, handling, and fingering, which [the claimant's] limitation on repetitive hand activities may preclude"); *Farris v. Astrue*, No. 08-0733-CV-W-REL-SSA, 2009 WL 3401153, at *14 (W.D. Mo. Oct. 20, 2009) ("I have carefully read the transcript of the vocational expert's testimony, and I have found that

the ALJ did not obtain an explanation from the vocational expert as to the conflict between her testimony (that a person could be a ticket taker or a retail marker if he is unable to repetitively use his hands) and the Dictionary of Occupational Titles (that a ticket taker and a retail marker must be able to frequently handle).  I further find that since there was no explanation at all, the ALJ failed to determine if the explanation for the conflict was reasonable and provided a basis for relying on the vocational expert testimony rather than on the information in the Dictionary of Occupational Titles.").

I am persuaded, as the plaintiff contends, *see* Statement of Errors at 3, and as this split in the caselaw suggests, that there is at a minimum a facial ambiguity, rendering it unclear whether a person restricted from repetitive fine manipulation can perform work requiring frequent fingering.  *See Alexander v. Astrue*, Civil Action No. 07-4913, 2008 WL 4091684, at *6 (E.D. Pa. Sept. 2, 2008) ("The inherent ambiguity in the term 'repetitive' requires an express definition to be certain of its connotation.").

Like the court in *Alexander*, I conclude that this ambiguity precludes the commissioner from relying on the testimony of the vocational expert to carry his Step 5 burden that the plaintiff was capable of performing work existing in significant numbers in the national economy:

> I am unable to determine whether substantial evidence supports the ALJ's decision because the ALJ relied on the vocational expert's testimony after instructing the expert [the claimant] had a restriction on repetitive motion. Neither the ALJ nor the vocational expert clarified the meaning of 'repetitive.' Although there is a plausible distinction between repetitive and frequent, *see Gardner*, 257 Fed. Appx. at 30 n.5, it is unclear whether the ALJ and vocational expert grasped the distinction.  In any event, the question and answer suggest ambiguity that could impact [the claimant's] eligibility for disability.  For example, the jobs the ALJ determined [the claimant] can perform require varying degrees of reaching, handling, or fingering, which as a matter of logic and practice may involve repetitive motion of the wrists.  If the ALJ meant, or the vocational expert understood, 'repetitive' to include frequent use, a conflict exists because the jobs the vocational expert testified [the claimant] could perform required at least frequent motion.

7

*Id*. (citation omitted).

On this basis, I recommend that the decision be reversed and the case remanded for further proceedings not inconsistent herewith.

### B. RFC Determination

The plaintiff alternatively argues that the administrative law judge's RFC finding was unsupported by substantial evidence in that the limitation to no repetitive fine manipulation was based not on a medical expert's RFC finding but rather, necessarily, on the administrative law judge's own interpretation of the raw medical evidence. *See* Statement of Errors at 3-4. In the circumstances presented, I find no error.

It is true, as a general proposition, that an administrative law judge, as a layperson, is not qualified to craft a claimant's RFC based on his or her own analysis of the raw medical evidence but rather must rely on the judgment of medical experts on that subject matter. *See, e.g., Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he or she "is not qualified to assess residual functional capacity based on a bare medical record."). It is also true that there is no medical expert RFC opinion of record finding a limitation against repetitive fine manipulation, *see* Record at 176-83 (RFC assessment of Disability Determination Services ("DDS") nonexamining consultant Richard T. Chamberlin, M.D., finding that no manipulative limitations had been established), 194-201 (RFC assessment of DDS nonexamining consultant Paul Stucki, M.D., finding that no manipulative limitations had been established), although a DDS examining consultant, Richard Stockwell, D.O., stated in a report of a February 15, 2008, examination of

the plaintiff that "[a]voidance of repetition and heavy lifting would certainly be a consideration[,]" *id*. at 174.

Nonetheless, the administrative law judge made clear that the source of his finding of a limitation against repetitive fine manipulation was his decision to credit the plaintiff's own testimony at hearing that she had such a restriction. *See id*. at 14 ("The [plaintiff's] cervical spine radiculopathy may also have caused a degree of reduced grip strength and functional limitation, so whether due to carpal tunnel syndrome or cervical spine radiculopathy, the undersigned has given some weight to the [plaintiff's] subjective complaints, and reduced the [plaintiff's] residual functional capacity for lifting, overhead work, and repetitive fine manipulation to account for these conditions."); *see also id*. at 32 (testimony of plaintiff that she has no "ability to do repetitive type activities" with her hands or arms)*,* 38 (testimony of plaintiff that she is "in chronic pain, not being able to stand, sit, or do anything repetitive with writing, or typing").

In these circumstances, I fail to see how the plaintiff can complain that the finding of the restriction in question was unsupported by substantial evidence. This point of error provides no independent basis for reversal and remand.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for*

*oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 20th day of May, 2010.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge